UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
R Brooke Jackson, District Judge

Criminal Case No. 1:17-cr-00417-RBJ-3

UNITED STATES OF AMERICA,

    Plaintiff,

v,

PASQUALE RUBBO

    Defendant.

---

## ORDER ON MOTION FOR COMPASSIONATE RELEASE
---

After considering the applicable factors provided in 18 U.S.C. § 3553(a) and 18 U.S.C. § 3582(c)(1)(A), the applicable policy statements issued by the Sentencing Commission, and the government's response, ECF No. 236, Mr. Rubbo's motion for compassionate release, ECF No. 231, is denied for the following reasons:

1. Mr. Rubbo, presently age 54, pled guilty in 2018 to Count 1 (Attempt and Conspiracy to Commit Fraud) and Count 18 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity). He was a participant in an investment and securities scheme with his sister Angela Monaco, two brothers Joseph and Nicholas Rubbo, and co-conspirator Steven Dykes that defrauded investors in a "Scrubbieglove" cleaning product.[1] As the Tenth Circuit later commented, Mr. Rubbo's "primary role in the scheme involved intimidating and threatening investors to ensure their silence." ECF No. 217 at 2.

---

[1] Joseph and Nicholas Rubbo were convicted and sentenced in Case No. 17-cr-00411-RBJ. Both later filed motions for compassionate Release. *Id.* at ECF Nos. 65 and 68. The Court denied Joseph's motion but granted Nicholas's motion. *Id.* at ECF Nos. 66 and 76.

2. On August 27, 2018 this Court sentenced Mr. Rubbo to 106 months imprisonment plus three years supervised release on each count, to be served concurrently. ECF No. 145. He appealed the sentence on grounds that the government had breached the parties' Plea Agreement. ECF No. 154. However, the Tenth Circuit found to the contrary and therefore dismissed the appeal on the ground that the appellate waiver provision in the Plea Agreement barred the appeal. ECF No. 217 (mandate ECF No. 219).

3. In the pending motion for compassionate release Mr. Rubbo states that his 77-year old mother, Angela Rubbo, has serious illnesses and needs in-home care. I note that the Presentence Investigation Report stated that Ms. Rubbo, then age 75, lives in Coral Springs, Florida, that she received Social Security Disability Income; and that Mr. Rubbo resided with her and assisted her with her daily needs. ECF No. 113 at 25.[2] Her present condition, related by letters from her doctors, include mobility problems necessitating a hip replacement; hypertension; adult onset diabetes; visual compromise (glaucoma); COPD; chronic kidney disease; congestive heart failure; cellulitis in her lower legs; osteomyelitis; severe scoliosis; osteoarthritis; severe depression; anxiety; and vertigo. ECF No. 231 at 13-14. Mr. Rubbo states that he was his mother's caregiver and wishes to be released to resume that role.

4. Mr. Rubbo reports that he, too, has health issues. His doctor reported in a May 21, 2020 letter that Mr. Rubbo was being treated for hypertension; that he also had a long-standing weight problem; and that the COVID-19 virus was causing him extreme emotional distress related to its transmissibility within the prison system. *Id.* at 15.

---

[2] The PSIR also reported that Ms. Rubbo had been a codefendant and had received a 48-month prison sentence in Mr. Rubbo's prior fraud case in the Southern District of Florida, and that she traveled to Colorado with defendants Angela Monaco and Nicholas Rubbo to meet the Colorado investors who were victimized in the present case in April 2014. *Id.* at 25, 38.

5. The government opposes the motion. ECF No. 236. It acknowledges that Mr. Rubbo has exhausted his administrative remedies. *Id.* at 4. However, the government points out that that this was an extensive fraudulent scheme carried out over more than five years. A total of 30 victims, 19 of whom were age 70 or above, sustained more than $6 million in losses. Two of the 19 elderly victims, 85-year old brothers, had losses exceeding $5 million. And, this was Mr. Rubbo's third federal fraud conviction, and his role primarily to serve as "the muscle" and to make threats, and secondarily to solicit money, "aggravated what was already an expansive and egregious fraud." *Id.* at 2-4. However, he has served only about 25% of his sentence to date (about 30% if he receives a reduction of 15% for good time credit), and he has paid nothing on his restitution obligations. *Id.* at 1, 3-4.

6. Regarding his mother's situation, the government points out (as did the Warden who denied his administrative request) that Mr. Rubbo's desire to care for her does not meet the Sentencing Commission's "extraordinary and compelling" criteria for a compassionate release based on family circumstances, i.e., "The death or incapacitation of the caregiver of the defendant's minor child or minor children" or "The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* at 4.

7. Concerning Mr. Rubbo's fear of contracting COVID-19 and of having complications related to his hypertension and obesity, the government notes that the BOP has implemented measures to combat the virus, and that at FCI Danbury, a low-security institution where Mr. Rubbo is incarcerated, only four inmates and one staff have active COVID-19 infections at the present time. *Id.* at 5-6.

3

8. Mr. Rubbo does not meet any of the three identified categories of extraordinary and compelling reasons for a compassionate release: (1) medical condition – he does not have a terminal illness or a serious physical or mental condition that substantially diminishes his ability to provide self-care within a correctional facility; (2) age – he is not at least 65 years old and has not served 75% of his sentence; or (3) family circumstances – discussed above.

9. I am likewise not persuaded that he has identified an "other reason" that qualifies as an extraordinary or compelling reason for a compassionate release. His desire to care for his mother is admirable, and the Court certainly does not wish to add unnecessarily to her burden. The Court hopes and trusts that Ms. Rubbo will have adequate care from a combination of her doctors, other family members including her son Nicholas for whom the Court did grant a compassionate release, friends, hired help, and/or an appropriate institution if necessary. Mr. Rubbo has presented no evidence that his mother has gone without care in his absence. Just as Mr. Rubbo's desire to care for his mother did not prevent this Court from imposing a fair and appropriate sentence, it does not persuade the Court to release him after serving only about 25% of that sentence.

10. As for his own health, hypertension and obesity are risk factors recognized by the CDC as potentially creating complications if an individual contracts COVID-19. But given his age, the measures the BOP has taken to protect inmates at his facility, and the BOP's constitutional obligation to provide adequate medical care in the event he does contract the virus, I am not convinced that his medical situation presents an sufficiently extraordinary and compelling reason for a compassionate release in his circumstances. Several § 3553(a) factors, notably including the nature and extent of his offense, his criminal history, his lack of respect for

the law or the rights of others, punishment, the need for deterrence, and the fact that he has served only a fraction of his sentence militate otherwise.

## ORDER

Defendant's motion for compassionate release, ECF No. 231, is DENIED.

DATED this 6th day of November, 2020.

BY THE COURT:

_____

R. Brooke Jackson

U.S. District Court Judge