UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
R Brooke Jackson, District Judge

Criminal Case No. 1:17-cr-00417-RBJ-3

UNITED STATES OF AMERICA,

 Plaintiff,

v,

PASQUALE RUBBO,

 Defendant.

---

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

---

 On November 6, 2020 the Court denied Mr. Rubbo's motion for compassionate release which had been filed on his behalf by counsel. ECF No. 237. On November 23, 2021 Mr. Rubbo, representing himself pro se, filed another motion for compassionate release, joining with it a request for appointment of counsel. ECF No. 249. After considering the applicable factors provided in 18 U.S.C. § 3553(a) and 18 U.S.C. § 3582(c)(1)(A), the applicable policy statements issued by the Sentencing Commission, the government's response, ECF No. 252, and Mr. Rubbo's addendum, ECF No. 253, his second motion for compassionate release is denied for the following reasons:

 1. Mr. Rubbo, presently age 55, pled guilty in 2018 to Count 1 (Attempt and Conspiracy to Commit Fraud) and Count 18 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity). He was a participant in an investment and securities scheme with his sister Angela Monaco, two brothers Joseph and Nicholas Rubbo, and co-conspirator Steven

1

Dykes that defrauded investors in a "Scrubbieglove" cleaning product.[1]  As the Tenth Circuit later commented, Mr. Rubbo's "primary role in the scheme involved intimidating and threatening investors to ensure their silence."  ECF No. 217 at 2.

2.  On August 27, 2018 this Court sentenced Mr. Rubbo to 106 months imprisonment plus three years supervised release on each count, to be served concurrently.  ECF No. 145.  He appealed the sentence on grounds that the government had breached the parties' Plea Agreement.  ECF No. 154.  However, the Tenth Circuit found to the contrary and therefore dismissed the appeal on the ground that the appellate waiver provision in the Plea Agreement barred the appeal.  ECF No. 217 (mandate ECF No. 219).

3.  In his first motion for compassionate release Mr. Rubbo stated that his 77-year old mother, Angela Rubbo, has serious illnesses and needs in-home care.  I noted that the Presentence Investigation Report stated that Ms. Rubbo, then age 75, lived in Coral Springs, Florida; that she received Social Security Disability Income; and that Mr. Rubbo resided with her and assisted her with her daily needs.  ECF No. 113 at 25.[2]  Her condition, related by letters from her doctors, included mobility problems necessitating a hip replacement; hypertension; adult onset diabetes; visual compromise (glaucoma); COPD; chronic kidney disease; congestive heart failure; cellulitis in her lower legs; osteomyelitis; severe scoliosis; osteoarthritis; severe depression; anxiety; and vertigo.  ECF No. 231 at 13-14.  Mr. Rubbo stated that he was his mother's caregiver and wished to be released to resume that role.

---

[1] Joseph and Nicholas Rubbo were convicted and sentenced in Case No. 17-cr-00411-RBJ.  Both later filed motions for compassionate Release.  *Id.* at ECF Nos. 65 and 68.  The Court denied Joseph's motion but granted Nicholas's motion.  *Id.* at ECF Nos. 66 and 76.

[2] The PSIR also reported that Ms. Rubbo had been a codefendant and had received a 48-month prison sentence in Mr. Rubbo's prior fraud case in the Southern District of Florida, and that she traveled to Colorado with defendants Angela Monaco and Nicholas Rubbo to meet the Colorado investors who were victimized in the present case in April 2014.  *Id.* at 25, 38.

4. Mr. Rubbo also reported that he, too, had health issues. His doctor reported in a May 21, 2020 letter that Mr. Rubbo was being treated for hypertension; that he also had a long-standing weight problem; and that the COVID-19 virus was causing him extreme emotional distress related to its transmissibility within the prison system. *Id.* at 15.

5. The government opposed the motion. ECF No. 236. It acknowledged that Mr. Rubbo had exhausted his administrative remedies. *Id.* at 4. However, the government pointed out that this was an extensive fraudulent scheme carried out over more than five years. A total of 30 victims, 19 of whom were age 70 or above, sustained more than $6 million in losses. Two of the 19 elderly victims, 85-year old brothers, had losses exceeding $5 million. This was Mr. Rubbo's third federal fraud conviction, and his role primarily to serve as "the muscle" and to make threats, and secondarily to solicit money, "aggravated what was already an expansive and egregious fraud." *Id.* at 2-4. However, he had served only about 25% of his sentence to date (about 30% if he receives a reduction of 15% for good time credit), and he had paid nothing on his restitution obligations. *Id.* at 1, 3-4.

6. Regarding his mother's situation, the government pointed out (as did the Warden who denied his administrative request) that Mr. Rubbo's desire to care for her did not meet the Sentencing Commission's "extraordinary and compelling" criteria for a compassionate release based on family circumstances, i.e., "The death or incapacitation of the caregiver of the defendant's minor child or minor children" or "The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* at 4.

7. Concerning Mr. Rubbo's fear of contracting COVID-19 and of having complications related to his hypertension and obesity, the government noted that the BOP had implemented

3

measures to combat the virus, and that at FCI Danbury, a low-security institution where Mr. Rubbo was incarcerated, only four inmates and one staff had active COVID-19 infections at the time. *Id.* at 5-6.

   8.  I found that Mr. Rubbo did not meet any of the three identified categories of extraordinary and compelling reasons for a compassionate release: (1) medical condition – he did not have a terminal illness or a serious physical or mental condition that substantially diminished his ability to provide self-care within a correctional facility; (2) age – he was not at least 65 years old and had not served 75% of his sentence; or (3) family circumstances – discussed above.

   9.  I was also not persuaded that he had identified an "other reason" that qualified as an extraordinary or compelling reason for a compassionate release. I found that his desire to care for his mother was admirable, and that the Court did not wish to add unnecessarily to her burden. I expressed my hope that Ms. Rubbo would have adequate care from a combination of her doctors, other family members including her son Nicholas for whom the Court did grant a compassionate release, friends, hired help, and/or an appropriate institution if necessary. But I also noted that Mr. Rubbo had presented no evidence that his mother had gone without care in his absence. I concluded that Mr. Rubbo's desire to care for his mother did not deter the Court from imposing a fair and appropriate sentence, and it likewise did not persuade the Court to release him after serving only about 25% of his sentence.

   10.  As for his own health, I agreed that hypertension and obesity are risk factors recognized by the CDC as potentially creating complications if an individual contracts COVID-19. But given his age, the measures the BOP has taken to protect inmates at his facility, and the BOP's constitutional obligation to provide adequate medical care in the event he does contract the virus, I was not convinced that his medical situation presented a sufficiently extraordinary

and compelling reason for a compassionate release in his circumstances. Moreover, several § 3553(a) factors, notably including the nature and extent of his offense, his criminal history, his lack of respect for the law or the rights of others, punishment, the need for deterrence, and the fact that he has served only a fraction of his sentence militated against release.

11. The pending motion reiterates Mr. Rubbo's risk factors for complications if he contracts COVID-19 and the continuing deterioration of his mother's health, supported by another letter from her doctor. ECF No. 249 at 1-3, 7-8, 18. It updates his exhaustion of administrative remedies by attaching a letter from his warden denying his request for compassionate release (the first letter was dated April 22, 2020; the second was dated October 20, 2020, but still before my order denying his first motion). *Id.* at 6-7, 20-21. It criticizes the warden's opposition to his release. *Id.* at 8-10. And, it emphasizes his rehabilitation efforts including service on the Food Service team, his having taken more than 15 educational courses, and his having an incident-free record. *Id.* at 10-11. He states that COVID continues to be a serious concern, particularly since, he states, less than 50% of the BOP employees and 65% of the inmates have been vaccinated. *Id.* at 11-13. He states that since the pandemic began, the Danbury facility has been on a lockdown status, which adds to his anxiety. *Id.* at 13-14.

12. The government opposes the motion, noting that it is largely the same as Mr. Rubbo's previous motion except that he had served approximately 44% of his sentence as of the date of the government's response compared to approximately 25% last time. The government also reiterates its views of the seriousness of the fraud and Mr. Rubbo's role in it. ECF No. 252

13. In his addendum, ECF No. 253, Mr. Rubbo discusses FCC Danbury's staffing issues and the arrival of the Omicron variant. The Court does not underestimate anyone's concerns about COVID, especially individuals with higher risk factors. The Court has personal

knowledge of that. But the risk of contracting COVID is not, by itself, a reason to release an inmate where other relevant factors suggest otherwise. Fortunately, Mr. Rubbo has received his vaccinations, and he apparently has not contracted COVID during the approximately 43 months he has served. I truly hope that continues to be the case, and if not, I am confident that he will receive appropriate care for the illness.

14. The Court denies the motion to appoint counsel. Mr. Rubbo has presented the facts and the law well on his own. The problem is not the presentation but the facts themselves, which counsel could not change.

15. Mr. Rubbo has served approximately 48% of his sentence, assuming that he receives a 15% reduction for good time. Contrary to his motion, I consider that to be a relevant factor in assessing a motion for compassionate release. The sentence imposed was within, but toward the low end of, the recommended guideline range. The sentence was fair and appropriate, considering his criminal history, the fraudulent scheme, and Mr. Rubbo's role in it; and it was proportionate to the sentences imposed on the other participants in the scheme. The Court expects that the sentences it imposes will be served, absent extraordinary and compelling reasons to modify it. The reasons Mr. Rubbo presents have previously been considered by the Court but found not to meet the test of extraordinary and compelling. I so find again at this time.

## ORDER

Defendant's motion for compassionate release, ECF No. 249, is DENIED.

DATED this 29th day of March, 2022.

BY THE COURT:

*[signature: Brooke Jackson]*

_____

R. Brooke Jackson

U.S. District Court Judge